ATCHISON, T. & S. F. RY. CO. et al. v. UNITED STATES.

UNION PAC. R. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).

(Commerce Court. November 14, 1911.)

Nos. 50, 51.

1. CARRIERS (§ 23*)—INTERSTATE COMMERCE ACT—CONSTRUCTION—LONG AND SHORT HAUL CLAUSE.

The first proviso of Interstate Commerce Act Feb. 4, 1887, c. 104, § 4, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155), as amended by Act June 18, 1910, c. 309, § 8, 36 Stat. 547, authorizing the Interstate Commerce Commission in special cases, after investigation, to exempt a carrier from the prohibition against charging a lower rate for a long than for a short haul, is to be construed in harmony with the other provisions of the act, and as not giving the Commission an unlimited discretion, but imposing upon it, not merely the right, but the duty, to grant such exemption whenever, on investigation, it shall find that no violation of any section of the act would thereby be involved. As so construed, the section is constitutional. (Archbald, Judge, not concurring.)

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 23.*

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson C. Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

2. CARRIERS (§ 28*)—CONSTRUCTION OF INTERSTATE COMMERCE ACT—LONG AND SHORT HAUL CLAUSE.

No undue prejudice to an intermediate point, in violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 3 (U. S. Comp. St. 1901, p. 3155), can be predicated merely on the fact that a rail carrier charges a less rate to a terminal point on the Pacific Coast, where such rate is forced by competition.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 75–79; Dec. Dig. § 28.*]

3. COMMERCE (§ 85*)—INTERSTATE COMMERCE ACT—LONG AND SHORT HAUL PROVISION—POWER OF INTERSTATE COMMERCE COMMISSION.

The power given the Interstate Commerce Commission by the first proviso to section 4 of Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155), as amended by Act June 18, 1910, c. 309, § 8, 36 Stat. 547, to authorize a carrier to charge less for a long than for a short haul, does not extend to the making of an order determining the relation between long and short haul rates, irrespective of absolute rates.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

Petitions by the Atchison, Topeka & Santa Fé Railway Company and others and by the Union Pacific Railroad Company and others against the United States, in which the Interstate Commerce Commission, the City of Spokane and others, the Chicago Association of Commerce, the Portland Chamber of Commerce and others, the Interior Counties Freight Bureau of Southern California and others, and

the Giroux Consolidated Mines Company, intervened. On motions for preliminary injunctions and motions to dismiss. Motions to dismiss overruled, and motions for injunctions granted.

Charles Donnelly, F. C. Dillard, and Robert Dunlap (T. J. Norton, E. C. Lindley, R. B. Scott, Burton Hanson, James C. Jeffery, H. A. Scandrett, W. F. Herrin, and Gardiner Lathrop, on the brief), for petitioners.

J. N. Teal, for cities of Seattle, Tacoma, and Portland.

James A. Fowler, Asst. Atty. Gen., and Blackburn Esterline, Sp. Asst. Atty. Gen., for the United States.

P. J. Farrell, for Interstate Commerce Commission.

H. M. Stephens, for city of Spokane and others.

Byron Waters, for Interior Counties Freight Bureau of Southern California and others.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Associate Judges.

MACK, Judge. These cases involve the constitutionality and interpretation of section 4 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), as amended June 18, 1910 (36 Stat. 547, c. 309, § 8), and the powers of the Interstate Commerce Commission thereunder.

The sections as originally framed and as amended follow in parallel columns. The omissions from the original section and the additions in the amended section are italicized.

Sec. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, *under substantially similar circumstances and conditions*, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge *and* receive as great compensation for a shorter as for a longer distance: *Provided, however, that upon application to the Commission appointed under the provisions of this act*, such common carrier may, in special cases, after investigation *by the Commission*, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated com-

Sec. 4. *(As amended June 18, 1910.)* That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance over the same line *or route* in the same direction, the shorter being included within the longer distance, *or to charge any greater compensation as a through route than the aggregate of the intermediate rates subject to the provisions of this act;* but this shall not be construed as authorizing any common carrier within the terms of this act to charge *or* receive as great compensation for a shorter as for a longer distance: *Provided, however, that upon application to the Interstate Commerce Commission such common carrier may in special cases, after investigation, be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property; and the

mon carrier may be relieved from the operation of this section *of this act.*

Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section: *Provided further, that no rates or charges lawfully existing at the time of the passage of this amendatory act shall be required to be changed by reason of the provisions of this section prior to the expiration of six months after the passage of this act, nor in any case where application shall have been filed before the Commission, in accordance with the provisions of this section, until a determination of such application by the Commission.*

*Whenever a carrier by railroad shall in competition with a water route or routes reduce the rates on the carriage of any species of freight to or from competitive points, it shall not be permitted to increase such rates unless after hearing by the Interstate Commerce Commission it shall be found that such proposed increase rests upon changed conditions other than the elimination of water competition.*

At the time of the amendment a number of complaints of unreasonable and unjustly prejudicial rates, filed by commercial bodies of the so-called intermountain cities, such as Spokane, Wash., Reno, Nev., and Phœnix, Ariz., were pending before the Commission. Similar complaints had been filed and partial adjustments thereof made at various times, beginning with the year 1892. Because of the amendment, the Commission refrained from finally determining the commodity rates to which these cities were entitled on west-bound traffic, believing that orders made under applications for relief, as provided in section 4, would obviate the necessity therefor.

Applications were duly filed in a form prescribed by the Commission, which required carriers to state that the rate to the intermediate points should not be more than a certain number of cents per 100 pounds, per ton, per car, or per package, in excess of the rates to the farther point, in and by which applications the carriers asked to be allowed to maintain the Pacific Coast terminal rates then in force, lower than the rates to intermediate points fixed by specified tariffs on file with the Commission.

After a full hearing and investigation, two reports and orders were made. Each report was entitled in the matter of the application under section 4. One of them was also entitled in the matter of the then pending Nevada and Arizona complaints (21 I. C. C. Rep. 329), although the order based thereon was entitled only in the matter of the applications under section 4; the other report was also entitled in the matter of the then pending Spokane and Salt Lake City complaints

(21 I. C. C. Rep. 400), although the order based thereon was entitled only in the matter of the Spokane complaint.

The first order provided that for the purposes of the disposition of the applications the United States should be divided into five zones (being the same as those specified in a transcontinental tariff on file), as follows:

Zone No. 1 should comprise all that portion of the United States lying west of a line called "line No. 1," which extends in a general southerly direction from a point immediately east of Grand Portage, Minn.; thence southwesterly, along the northwestern shore of Lake Superior, to a point immediately east of Superior, Wis.; thence southerly, along the eastern boundary of transcontinental group F, to the intersection of the Arkansas and Oklahoma state line; thence along the west side of the Kansas City Southern Railway to the Gulf of Mexico.

Zone No. 2 should embrace all territory in the United States lying east of line No. 1 and west of a line called "line No. 2," which begins at the international boundary between the United States and Canada, immediately west of Cockburn Island, in Lake Huron; passes westerly through the Straits of Mackinac; southerly through Lake Michigan to its southern boundary; follows the west boundary of transcontinental group C to Paducah, Ky.; thence follows the east side of the Illinois Central Railroad to the southern boundary of transcontinental group C; thence follows the east boundary of group C to the Gulf of Mexico.

Zone No. 3 should embrace all territory in the United States lying east of line No. 2 and north of the south boundary of transcontinental group C, and on and west of line No. 3, which is the Buffalo-Pittsburgh line, from Buffalo, N. Y., to Wheeling, W. Va., marking the western boundary of Trunk Line Freight Association territory; thence follows the Ohio river to Huntington, W. Va.

Zone No. 4 should embrace all territory in the United States east of line No. 3 and north of the south boundary of transcontinental group C.

Zone No. 5 should embrace all territory south and east of transcontinental group C.

The order then proceeded as follows:

"It is further ordered: (1) That those portions of the above-numbered applications that request authority to maintain higher commodity rates from points in zone No. 1 to intermediate points than to Pacific Coast terminals be, and the same are hereby, denied, effective November 15, 1911; (2) that petitioners herein be, and they are hereby, authorized to establish and maintain, effective November 15, 1911, commodity rates from all points in zones numbered 2, 3, and 4, as above defined, to points intermediate to Pacific Coast terminals that are higher to intermediate points than to Pacific Coast terminals; provided, that the rates to intermediate points from points in zones numbered 2, 3, and 4 shall not exceed the rates on the same commodities from the same points of origin to the Pacific Coast terminals by more than 7 per cent from points in zone No. 2, 15 per cent from points in zone No. 3, and 25 per cent from points in zone No. 4. The Commission does not hereby approve any rates that may be established under this authority, all such rates being subject to complaint, investigation, and correction if they conflict with any other provisions of the act."

The second order is similar in all respects, except that it refers only to Spokane and certain other intermountain cities, and expressly provides that the carriers shall comply therewith for a period of not less than two years.

The two suits brought in this court to enjoin the enforcement of these orders, respectively, were heard together. The same questions are presented in each of them.

[1] First. We agree with the Commission that section 4 of the act to regulate commerce, as amended June 18, 1910, is constitutional. The Commission concedes, and we concur therein, that if the first proviso in this section is to be literally construed, and if, under such construction, no limit has been imposed upon and no standard given to guide the exercise of the Commission's discretion in granting authority to depart from the rule forbidding a lesser rate for the long than for the short haul in the same direction and over the same line or route, the proviso would be unconstitutional, as an unlawful delegation of legislative power. We concur, too, in the Commission's view, that, if the proviso were for this reason illegal, the entire section would thereby be nullified, inasmuch as both the context and the history of the act demonstrate that the proviso is an integral part of the section, and that a hard and fast rule absolutely prohibiting such a lesser rate would not have been enacted.

To determine, however, the true meaning of the proviso, the entire act must be examined. In the light of the other sections, and of the legislative and judicial history of the long and short haul clause, we are of the opinion that the guide to the exercise of the Commission's discretion is to be found in the other sections of the act, thereby making the discretion to exempt carriers from the prohibition in fact not unlimited, and imposing upon the Commission, not merely the right, but also the duty, to grant such exemption whenever, on investigation, it shall find that no violation of any section of the act would thereby be involved.

If, therefore, the proposed rate, lower for the long than for the short haul, violates no provision of the act, and if, in particular, it neither tends to produce an unreasonable rate for the short haul, nor operates unduly to prejudice the short-haul point and unduly to prefer the long-haul point, it is the duty of the Commission to grant exemption from the hard and fast rule laid down in the first clause of section 4.

[2] Second. The orders sought to be enjoined do not establish absolute rates for either the long or short haul, or prescribe the extent, in dollars and cents, that the short-haul rate may exceed the present or some definitely fixed long-haul rate; but they do establish a relation between *any* long-haul rate that the carrier may put into effect and the short-haul rate, determining that from zone 1 the western short-haul rate shall not exceed the long-haul rate, and that from zones 2, 3, and 4, the short-haul shall not exceed the long-haul rate by more than 7 per cent., 15 per cent., and 25 per cent. respectively.

The Commission found specifically that the Pacific Coast rates from part of this eastern territory were forced by water competition, and that the rates from other parts were forced by market competition;

for example, that the railroads based the New York-Seattle rate on the ocean competition, and that they granted the same rate from St. Paul to Seattle, in order to enable St. Paul to compete with New York in the Seattle market.

Under the fourth section as originally framed, it was decided (E. T., etc., Ry. Co. v. I. C. C., 181 U. S. 1, 21 Sup. Ct. 516, 45 L. Ed. 719, and cases cited therein) that carriers might, in the first instance and without application to the Commission, make the rate less for the long than for the short haul, if, in fact, the circumstances and conditions were not substantially similar, taking their chances on a subsequent determination by a court that they had erred in so doing and had thereby violated the law. They could, however, and in many instances did, apply to the Commission for the authority. After the section was construed as not requiring such an application in the first instance, the carriers, it was often charged, abused their privilege by making the rate for the long haul less than for the short haul, although the circumstances and conditions were substantially similar. This charge was, in any event, one of the causes that led to the amendment of the section, whereby the clause "under substantially similar circumstances and conditions" was eliminated therefrom. The practical change thereby produced in section 4 was to compel the carriers to make application to the Commission if they desired to continue this practice.

The violation of the long and short haul rule is, however, only one instance—a most striking and irritating one, it is true—of the preference and prejudice which, when undue, is prohibited by section 3. Any violation of the original fourth section would necessarily involve a violation of the third section, and, e converso, if the lesser rate for the long haul than for the short were not in violation of the third section, it could not be in violation of the original fourth section. In E. T., etc., Ry. Co. v. I. C. C., supra, the court held that, when it is established that the rates charged to the shorter distance point are just and reasonable in and of themselves, and that the lesser rate for the longer haul is not wholly unremunerative, and has been forced upon the carriers by competition at the longer distance point, it must result that a discrimination springing alone from a disparity in rates cannot be held to be, in legal effect, the voluntary act of the carriers, and that therefore the provisions of the third section will not apply. The prohibition of the third section, it was said, is directed against undue preference arising from the voluntary and wrongful act of the carriers, and does not relate to acts the result of conditions wholly beyond the control of such carriers. The lesser rate for the long haul could not produce an unjust preference under the third section, when the competitive conditions at the longer distance point which had caused the lesser rate would produce the same preference, even though the carrier were forbidden to meet the competition. For example, as Seattle can get its supplies from New York by water, and Spokane, because of its location, cannot do so, Seattle cannot be said to be unduly favored merely because the rail carrier, in order to meet the water competition, charges a lesser rate from New York to Seattle, through Spokane, than from New York to Spokane,

provided the Spokane rate is reasonable per se and the Seattle rate not unremunerative. And so, too, if the St. Paul-Seattle rate is reduced to a point less than reasonable per se, although not unremunerative to meet the New York-Seattle rate, in order to enable the St. Paul merchants to compete with New York merchants at Seattle, Spokane could not complain merely because this rate is made less than the St. Paul-Spokane rate. In each of these cases Spokane is not unduly prejudiced, because, if the lower rail rate to Seattle were forbidden, Seattle would nevertheless, by reason of its location, be able to secure its supplies by water, and would therefore, in the nature of things, have this advantage over Spokane.

While the primary question in the E. T., etc., Ry. Co. Case, supra, was as to the right of the carriers, in the first instance and without application to the Commission, to make lesser rates for the long than for the short haul, inasmuch as the original complaint charged a violation of both the third and the fourth sections, the court necessarily considered section 3, and held that it could not be violated by making a lesser charge for the long than for the short haul, if the long-haul rate was forced by competition and was not unremunerative.

This construction of section 3 was not dependent upon the clause in section 4 which, by the amendment of 1910, has been stricken out. It was based upon the language of section 3 itself, which forbade, not any preference, but only an undue preference, and upon the determination that, in the nature of things, there could be nothing undue in a preference which was caused by the natural geographical situation, and which would continue, even if there were no railroad carriage. The amendment to section 4, therefore, has not changed the construction of section 3, and it follows that no unjust prejudice to Spokane and other interior points can now be predicated merely on the fact that the rate from any of the Eastern territory is less to the Pacific Coast terminals than to the intermediate points.

The Commission also found, however, that the present Pacific Coast rates from zone 1 had not been proven by the carriers, upon whom the burden was laid, to be less than reasonable per se. Assuming that they were fully reasonable per se, the Commission would have the power to refuse exemption from the long and short haul requirement, for under these circumstances any higher rates to intermediate points could be condemned as unreasonable and thus in violation of section 1 of the act.

But the order of the Commission as to this territory is not limited to a denial of the applications in the form in which they were presented; that is, to a denial of the maintenance of the then prevailing rates to the coast concurrently with higher rates to the interior points. It forbids the carrier to maintain any coast rate lower than the contemporaneous intermediate rate from these points. In other words, if the carrier from St. Paul, in order to meet new water competition from New York, should reduce the St. Paul-Seattle rate to a point less than at present, and less than a rate reasonable per se, but nevertheless somewhat remunerative, it would be compelled, under this order, to grant the same rate to the interior point, even though, under

these circumstances, a reasonable rate to the interior point, higher than the unreasonably low rate to the coast point, forced upon the carrier by such market competition under penalty of losing the business, would not be in violation of section 1 or of any other provision of the act.

This is likewise true of the order as to rates from the other zones. It is not based upon the current coast rates. It determines the relation of the short-haul rates to *any* coast rates that might be established by the carriers. It makes illegal a rate from Chicago to Spokane more than 7 per cent. higher than an unreasonably low, but remunerative, Chicago-Seattle rate forced by competition, even though the Chicago-Spokane rate be reasonable per se, and not in violation of any provision of the act.

Is the Commission empowered to make such an order? It is urged that, even if it must grant an application for relief, when the lower long-haul rate involves no violation of the act, nevertheless it may determine the extent of the exemption, and therefore it may fix the relation of rates.

But to sustain the constitutionality of the proviso in section 4 it must be read as imposing the duty on the Commission not only to grant exemption from the hard and fast rule when thereby no section of the act is violated, but also to grant such exemption to the extent that no section of the act is thereby violated; that is, the carrier is entitled under the act to be granted authority to charge as much less as it please for the long haul than for the short haul, provided the Commission shall first determine that it does not thereby violate any other provision of the law. In granting authority to make an absolute long-haul rate lower than some short-haul rate, the Commission would have the power and the duty to prevent a violation of section 1, and, by virtue of its authority to determine reasonable rates, to fix the short-haul rate.

Doubtless the Commission could, moreover, in order to prevent a violation of section 3, make relative rates in so far as this might be necessary to prevent an undue preference. For while, under the decision in E. T., etc., Ry. Co. v. I. C. C., supra, undue preference could not be predicated merely on the fact that the rate was less for the long than for the short haul, when the former was forced by water, market, or any kind of competition, it might be predicated thereon if the short-haul rate were not likewise based upon the same competition in so far as and to the extent that it ought fairly to be influenced thereby. For example, if the St. Paul-Seattle rate be made less than reasonable, although remunerative, to meet the forced New York-Seattle rate, so as to enable St. Paul to compete with New York in the Seattle market, Spokane might complain of unreasonable prejudice against it, if the St. Paul-Spokane rate were made higher than the New York-Spokane rate, and thereby similar competition were prevented at Spokane. So, too, as its merchants could get their supplies through Seattle at a price based on the New York-Seattle freight rate plus the back-haul rate, Spokane might have grounds for complaint of undue prejudice if the rate either from St. Paul or New York to Spokane were made higher than the rate from such point to

Seattle plus the back haul, because only to the extent of the back-haul cost could Spokane be said to be in any different position than Seattle, and therefore only to that extent could it justly be deprived of the benefits of the same competitive forces which determine the Seattle rate.

[3] But neither the equality of rates on shipments from zone 1, nor the relation between the rates on shipments from the other zones, as fixed in the order of the Commission, can be sustained upon any such considerations. In so far as the Commission attempts thus to determine the relation of the long and short haul rates, irrespective of absolute rates, it goes beyond any authority that has been vested in it; for it is not in the power of the Commission to say that 100 per cent., 107 per cent., or any given percentage of an unknown less than reasonable rate to the coast is necessarily a maximum reasonable and nondiscriminatory rate from the same point of origin to an interior point.

The practical effect of the Commission's order is either to compel a blanket rate from the entire East to the entire West, or to prevent the carriers from getting all the business which they now secure without loss by making rates which enable merchants to meet market competition. For example, if the forced New York-Seattle rate is $1, the St. Paul-Seattle rate cannot be made higher by the St. Paul carrier, unless it gives up the benefit of business which market competition at Seattle might bring to it. As long as it charges no one else an unreasonable rate, and as long as it does not carry under cost, it is entitled to grant St. Paul the market competitive rate of $1. Under the order, its rate to Spokane in that event could not exceed $1, while the New York carrier could charge $1.25. The latter, however, would also have the right to enable New York to meet St. Paul competition in Spokane. To do this it would have to reduce the New York-Spokane rate to $1. The result would be either to compel a blanket rate from all points east of St. Paul to all competitive points west of St. Paul, or to force the carriers to give up some business which could be carried without loss to themselves or damage to any one else. The Commission's order, moreover, does not even secure to Spokane the market competition of St. Paul and New York, since it empowers the railroads to charge a higher rate from New York, which might exclude New York from the Spokane market.

In a word, unless some through business is given up, the effect of the orders would be to put Spokane and other interior points on an equality with Seattle and other Pacific Coast points, at least from zone 1—a position to which they would not be entitled under all circumstances in view of their relative locations, the former 400 miles, more or less, in the interior, and the latter on the coast.

It follows that the motions to dismiss the petitions must be denied, and that writs to enjoin the enforcement of the orders, pending the final determination of the cases, must be issued. And it is so ordered.

ARCHBALD, Judge (concurring). It is conceded that if the right to approve or disapprove of an application by a carrier to charge more

for a shorter than for a longer haul is left by the fourth section of the interstate commerce act, as it is at present amended, to the uncontrolled discretion of the Commission, the section is invalid; also, that the proviso, taken as it reads, in terms confers such unlimited discretion; and that the section is only, therefore, to be saved in case a guide is found in other provisions of the statute.

"That section provides," says Mr. Commissioner Prouty, "that no carrier shall charge more for the short than for the long haul, unless upon application to the Commission permission to do so is granted by it. If this section were read by itself, and were taken at its literal face meaning, the Commission would possess unrestricted power to grant or deny such application. It could permit in one case and refuse in another, according as its fancy might dictate. So construed, the proviso would probably be void as a delegation of legislative authority. The making of rates is a legislative function. To say whether a carrier shall or shall not be allowed to charge more for the short than for the long haul is virtually the making of rates, and therefore an attribute of the Legislature. To invest an administrative body like this Commission with that unrestricted and unguided authority would be to give it legislative power, which cannot be done under our federal Constitution. It is one thing to authorize such a body to administer the law in accordance with certain rules and standards prescribed by the Legislature and an entirely different thing to turn over to it the exercise of the legislative discretion itself." Proceeding to consider whether the proviso could be separated from the rest of the section and the prohibitive part of it, where the charging of more for a shorter than for a longer haul over the same line in the same direction is forbidden, be sustained without regard to it, it was further held that the proviso was an essential part of the section which manifestly would not have been enacted without it, and that the whole must therefore stand or fall together. This is a correct exposition of the law, and could not have been better stated than is done in the opinion of the Commission.

But I do not see how, in the face of it, to escape the conclusion that the section is invalid. It is sustained by the Commission by importing into it the provisions of the first and third sections, which respectively prohibit unreasonable rates and unjust discriminations, where the requisite guide is found, as it is claimed, for the action of the Commission. "Bearing in mind," says the same learned and able Commissioner, "the authority which the Commission now administers in prescribing a reasonable rate and in declaring and correcting an undue preference, it seems evident that the purpose of Congress was to commit to this body the duty of determining whether, if the carrier was permitted to charge a higher rate at the intermediate point, that would result in a violation of the provisions of the act. But in so doing the Commission cannot act arbitrarily. It must investigate each case, and if after such investigation it is of the opinion that a departure from the rule of the fourth section would not result in unreasonable rates or undue discrimination it must permit that departure. If, upon the other hand, it is of the contrary opinion, it must refuse the

191 F.—55

permission. Such is the only possible construction which can be put upon this section in connection with the entire act, and if any doubt as to the real purpose of Congress could exist, it must be effectively put at rest by an examination of the history of the passage of this measure."

Undoubtedly the statute is to be taken as a whole, and the different sections read together; but I fail to see how this helps out the matter. By the first section it is prescribed that all charges for any service rendered or to be rendered by carriers subject to the act in the transportation of passengers or property shall be just and reasonable, and every unjust and unreasonable charge is prohibited and declared unlawful. This does no more than enact the common into the federal law, and neither adds to nor detracts from the rights of such carriers, except as it inferentially recognizes their right to a just and properly remunerative rate, in prohibiting an unjust and unreasonable one. But how does this assist the Commission in any given case whether to enforce or relieve the carrier from the greater short than long·haul charge prohibited by the first part of the section in question, or what direction or guide to that end does it afford? No doubt it insures to the carrier that the short-haul charge shall be reasonably remunerative where it has not been voluntarily abandoned, although the Commission in the order made has entirely disregarded this. But that is only half of the problem to be solved, if, indeed, it is that much. The point is that it affords no guide in determining when a disparity between the short and the long haul shall be permissible, which is the question which in each case is to be decided by the Commission.

But it is further said that at this juncture the third section comes in, and authorizes a less charge for a long than for a short haul, provided an undue or unreasonable preference or advantage does not result to any person or locality over any other. But this provision of the statute is not permissive, but prohibitive. It forbids in brief any undue discrimination, as the first forbids unjust or unreasonable rates, or the fourth the particular kind of discrimination against which it is leveled. It may be, correlatively or by inference, that a right to discriminate is recognized when it can be done without injustice or prejudice. But how, again, does this afford a guide to the Commission in determining when a greater short than long haul charge shall be sanctioned? The fourth section in express terms declares that, except as extenuated by the action of the Commission, a greater short than long haul charge is per se a discrimination and advantage which is unjust and undue, and not to be tolerated. And how is it possible, then, to say that a prohibition against what is undue furnishes a guide or rule in determining when it shall result that that which so on its face is to be regarded as undue shall no longer be so? There shall be no undue discrimination, says the third section. A greater short than long haul charge is an undue discrimination, says the fourth. At what, then, do you arrive by combining the one with the other? Or where is there to be found the criterion or standard which is to enable the Commission to say when and under what circumstances that which it is bound otherwise to say is an unjust and undue preference or advan-

tage of one locality over another is not so? All the guide there is, is its say-so. But, if it rests merely on that, the enactment is confessedly void, and the action of the Commission has nothing to sustain it. And that is the only conclusion which I can reach with regard to it. It is held good by the court for the reasons given by the Commission; but to this I cannot agree, and feel compelled in consequence to give expression to the views which I entertain to the contrary. There are at least such grave doubts with regard to the validity of the section that the question might well be passed by at this time; there being other grounds upon which the invalidity of the action of the Commission may be rested.

For there can be no reasonable doubt that, assuming that the fourth section is valid, the orders of the Commission go far beyond the power conferred by it. The authority given by the proviso is upon application of the carrier in *special cases* after investigation to permit the charging of less for longer than for shorter distances; the Commission having the right from time to time to prescribe the extent to which the carrier may be relieved from the absolute prohibition against this, which is otherwise imposed upon it. There must thus in each instance be an application by a carrier, and a special case which entitles the carrier to relief—whatever that may mean—must be set up and made out. And this fixes the limits of the Commission's authority. Its duty is to investigate what is so brought before it, and, if a case warranting it appears, to approve the application, or, if not, to refuse it. The Commission cannot go on, if it does not approve and make rates, or lay down rules by which they shall be made, upon its own initiative. The carrier, in making application for approval, does not submit or subject itself to any such exaction. The right to inaugurate to this extent still remains with the carrier the same as before the amendment. The authority assumed by the Commission here is not to be implied from the right to prescribe the extent to which from time to time the carrier may be relieved, in the words of the statute. This refers to the special case in each instance which the carrier is required to make out in order to get the approval of the Commission, and is necessarily confined to it. In this respect the phraseology of the section is not changed, and it never by any previous construction was carried outside of this; nor is there anything now which requires it. It may be that the applications made by the carriers here for the approval of existing long and short haul tariffs, blanketing the country, went beyond the statute. But if that was the case, the proper course to pursue was to throw them out upon that ground. The mere fact that they were in this form gave the Commission no authority to go on and prescribe rates by the wholesale.

The orders in controversy extend to the entire continent from east to west, saving only a comparatively small section in the southeast, which is reserved for subsequent consideration. This cannot by the broadest construction of the law be brought within it. By no device can the whole United States be made a "special case"; nor can the Commission, upon any just conception of its powers, lay down a hard and fast rule, which shall apply to every long and short haul case,

wherever originating or whatever its destination, from east to west across the country. Nor is this saved by the establishment of zones with varying percentages. As pointed out in the opinion of the court, this entirely disregards the right of the carriers to have considered what in each instance is a reasonable rate between points involved. It also overrides the established right of the carriers to make a less than reasonable rate to and from competitive points from whatever cause that competition arises. And it is an attempt to overcome the advantages possessed by coast over inland cities, in the face of what nature has provided. All this is fully discussed in the opinion of the court, in which I fully concur, and to which I can add nothing of consequence.

For these reasons, without regard to any others, the orders of the Commission were clearly invalid, and an injunction against them is properly to be granted; the motion to dismiss being necessarily overruled as the consequence. But I cannot see my way to go beyond this and declare the fourth section valid, on which, if anything is to be said, my opinion is to the contrary.