LOUISVILLE & N. R. CO. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

(Commerce Court, September 4, 1913.)

No. 86.

COMMERCE (§ 92*)—INTERSTATE COMMERCE COMMISSION—JURISDICTION OF COMMERCE COURT.

Judicial Code (Act March 3, 1911, c. 231) § 207, subd. 2, 36 Stat. 1148 (U. S. Comp. St. Supp. 1911, p. 216), which confers on the Commerce Court jurisdiction of "cases brought to enjoin, set aside, amend or suspend in whole or in part any order of the Interstate Commerce Commission," applies only to affirmative orders, and the court is without jurisdiction to review an order denying relief to a petitioner.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig. § 92.*]

Petition by the Louisville & Nashville Railroad Company against the United States, in which the Interstate Commerce Commission intervened. On objection to jurisdiction. Objection sustained, and petition dismissed.

For opinion of Interstate Commerce Commission, see 24 Interst. Com. Com'n R. 228.

William A. Colston and William A. Northcutt, both of Louisville, Ky., for petitioner.

Winfred T. Denison, Asst. Atty. Gen., and Thurlow M. Gordon, Sp. Asst. Atty. Gen., both of Washington, D. C., for the United States.

P. J. Farrell, of Washington, D. C., for Interstate Commerce Commission.

Before KNAPP, Presiding Judge, and HUNT, CARLAND, and MACK, Associate Judges.

CARLAND, J. An objection to our jurisdiction to hear and determine the questions presented by the petition is made by counsel for the United States. Counsel for the Interstate Commerce Commission do not urge this objection and are willing that we assume jurisdiction. The question of jurisdiction, however, is presented by the record, and we must take notice of it, even if the parties do not care to do so. That we have jurisdiction of a case must appear before we can do anything therein. Section 4 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]), as amended June 18, 1910 (36 Stat. 547, c. 309, § 8 [U. S. Comp. St. Supp. 1911, p. 1288]), provides that it shall be unlawful for any common carrier subject to the provisions of the act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property for a shorter than for a longer distance over the same line or route in the same direction, the shorter

being included within the longer distance. This section, however, contains the following proviso:

"Provided, however, that upon application to the Interstate Commerce Commission such common carrier may in special cases, after investigation, be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section."

The Louisville & Nashville Railroad Company operates a line of railroad extending from Louisville, Ky., to Nashville, Tenn. The rates published and charged over this route from Louisville to Nashville were lower in varying amounts on one or more classes of freight than its rates from Louisville to practically all the stations and towns along the route intermediate to Nashville; but this is alleged to be due to steamboat competition at Nashville on the Cumberland and Ohio rivers. This rate situation being on its face in violation of the fourth section above referred to, the petitioner filed its application with the Commission, praying to be relieved from the operation of said section so far as the towns on the line of petitioner between Louisville and Nashville were concerned. Bowling Green, Ky., is one of these towns. As a result of a hearing had on petitioner's application the Commission on October 8, 1912, made the following order:

"It is ordered, that that portion of said application No. 1,952 which seeks authority to continue to charge lower rates on traffic through Bowling Green, Ky., to and from Nashville, Tenn., than are contemporaneously in effect on like traffic to and from Bowling Green, Ky., be, and the same is hereby, denied, effective December 1, 1912.

"It is further ordered, that that portion of said application No. 1,952 which seeks authority to continue to charge lower rates on oranges from Jacksonville, Fla., through Bowling Green., Ky., to Louisville, Ky., than are contemporaneously in effect on like traffic to Bowling Green, Ky., be, and the same is hereby, denied, effective December 1, 1912."

In the present proceeding petitioner seeks to have this order annulled. Our jurisdiction to hear and determine matters alleged in the petition is not to be determined by the nature and extent of the power conferred upon the Commission by section 4 of the act to regulate commerce, and therefore we need not stop to consider what, if any, relief we could grant to the petitioner, provided we had jurisdiction to review the order of which complaint is made. Our jurisdiction must be determined by a consideration of subdivision 2, § 207, of the Judicial Code, which reads as follows:

"Cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission."

In Procter & Gamble v. United States, 225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091, the Supreme Court had this subdivision under consideration. In the case cited Procter & Gamble filed a complaint with the Commission charging that certain charges for demurrage established by interstate carriers were repugnant to the act to regulate commerce, because unjust and oppressive, and because such charges created preferences and discriminations. The Commission denied the relief asked and dismissed the complaint, whereupon Procter & Gam-

ble filed a petition in this court praying that the action of the Commission in denying relief be vacated and set aside. This court took jurisdiction of the case, and after hearing determined that the Commission did not err in dismissing the complaint. Procter & Gamble then appealed to the Supreme Court, and the question of the jurisdiction of this court being raised, it was held that it had no jurisdiction to review the action of the Commission in dismissing the Procter & Gamble complaint. The question before the Supreme Court was stated by the Chief Justice as follows:

"Is the authority of the Commerce Court confined to enforcing or restraining, as the case may require, affirmative orders of the Commission, or has it the power to exert its own judgment by originally interpreting the administrative features of the act to regulate commerce, and upon that assumption treat a refusal of the Commission to grant relief as an affirmative order and accordingly pass on its correctness?"

Then, referring to the language of subdivision 2, hereinbefore quoted, the court said:

"Giving to these words their natural significance, we think it follows that they confer jurisdiction only to entertain complaints as to affirmative orders of the Commission; that is, they give the court the right to take cognizance, when properly made, of complaints concerning the legality of orders rendered by the Commission, and confer power to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal. No resort to exposition can add to the cogency with which the conclusion stated is compelled by the plain meaning of the words themselves."

It is claimed that this court has already decided in A., T. & S. F. Ry. Co. v. United States (Com. C.) 191 Fed. 856, commonly called the "Inter-Mountain Case," the question of jurisdiction now under consideration in favor of petitioner. This claim must fail. It is true the Inter-Mountain Case was decided by this court before Procter & Gamble, supra, was decided by the Supreme Court; but the order in the Inter-Mountain Case was an affirmative order. The Commission did not in that case simply deny the relief prayed for and dismiss the petition, but went further and made an affirmative order wherein it prescribed the extent to which the petitioning carriers should be relieved from the operation of section 4 by establishing zones and a schedule of rates with reference thereto. That case and the one at bar are plainly distinguishable.

Counsel for petitioner argues that, if there is no power in this court to review the action of the Commission in cases where it simply denies relief under section 4, then that section confers arbitrary power upon the Commission to do as it pleases, and said section is therefore void. The jurisdiction of this court to review the action of the Commission in dismissing petitioner's complaint in no wise depends upon the validity of section 4. More than that, we cannot determine the merits of the controversy until we first find that we have jurisdiction to do so. It is further claimed that the effect of the denial of petitioner's complaint by the Commission as to Bowling Green is to compel petitioner to either raise the Nashville rate or lower the Bowling Green rate; that petitioner on account of competition cannot raise the Nashville rate, and therefore is compelled to lower the Bowling Green rate.

This, it is urged, shows that the effect of the action of the Commission was affirmative in compelling the reduction of the Bowling Green rate. So it may be said in the Procter & Gamble Case that the dismissal of its complaint by the Commission compelled it to pay demurrage charges which it claimed to be unjust; but this fact had no weight in the opinion of the Supreme Court.

We are clearly of the opinion that under the ruling in the Procter & Gamble Case we have no jurisdiction in the case at bar. The order will therefore be that the petition be dismissed.