# INTERSTATE COMMERCE COMMISSION *v.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 214.   Argued April 13, 1903.—Decided May 18, 1903.

1. When competition which controls rates prevails at a given point a dissimilarity of circumstances and conditions is created justifying a carrier in charging a lesser rate to such point, it being the longer distance, than it exacts to a shorter distance and non-competitive point on the same line.

2. A nearer and non-competitive point on the same line is not entitled to lower rates prevailing at a longer distance and competitive place on the theory that it could also be made a competitive point if designated lines of railway carriers by combinations between themselves agreed to that end.   The competition necessary to produce a dissimilarily of conditions must be real and controlling and not merely conjectural or possible.

3. Where a charge of a lesser rate for a longer than a shorter haul over the same line is lawful because of the existence of controlling competition at the longer distance place the mere fact that the less charge is made for the longer distance does not alone suffice to cause the lesser rate for the longer distance to be unduly discriminatory.

4. The Commission having found a rate to be unreasonable solely because it was violative of the act which forbids a greater charge for a lesser than for a longer distance under stated conditions and which prohibits undue discrimination, *held* that as the grounds upon which such holding was based resulted from an error of law it was proper not to conclude the question of the inherent unreasonableness of the rates, but to leave it open for further action by the Commission to be considered free from the errors of law which had previously influenced the Commission.

5. A carrier, in order to give particular places the benefit of their proximity to a competitive point and thereby afford them a lower rate than they would otherwise enjoy, may take into consideration the rate to the point of competition and make it the basis of rates to the points in question. To give a lower rate as the result of competition does not violate the provisions of the act to regulate commerce.

6. *Held*, that where a rate was based on an error of fact, which was not complained of before, or acted on by, the Commission, and had been corrected by the carriers long before the decision below, and the corrected rate had been in force for a long period, it was not necessary to revise the decree of the court below, which was in all other respects correct, so as to secure a continuance of the corrected rate.

THE connecting roads of the appellees form the short line— 496 miles in length—between New Orleans and Atlanta. The through line consists of the Louisville and Nashville Railroad from New Orleans to Montgomery, the Western Railway of Alabama between Montgomery and West Point, and the Atlanta and West Point Railroad from West Point to Atlanta.

LaGrange is on the Western Railway of Alabama, 104 miles from Montgomery. Opelika lies between Montgomery and LaGrange, 38 miles distant from the latter. LaGrange and the following stations between it and Atlanta are distant from Atlanta, as follows: LaGrange, 71 miles; Hogansville, 58 miles; Newnan, 30 miles; Palmetto, 25 miles; and Fairburn, 18 miles.

Pursuant to § 13 of the act to regulate commerce, Fuller E. Calloway, a merchant of LaGrange, filed a complaint against the appellees with the Interstate Commerce Commission. We take from the opinion rendered by the Commission the following synopsis of the averments of the complaint and answer:

"The complaint alleges, in substance, that defendants are subject to the provisions of the act to regulate commerce; that rates charged by them for the transportation by continuous carriage or shipment of freights, wholly by railroad, from New Orleans, La., to LaGrange, Ga., are unjust and unreason-

able in themselves, and relatively unjust and unreasonable as compared with lower rates charged by defendants for carrying the same commodities over longer distances from New Orleans through LaGrange to Hogansville, Newnan, Palmetto and Fairburn, Ga., and other localities; that defendants' said rates from New Orleans to LaGrange and said longer-distance points and other localities unjustly discriminate against complainant and others, the city of LaGrange and vicinity and traffic carried thereto, and subject merchants and dealers therein to undue and unreasonable prejudice and disadvantage, and give undue and unreasonable preference and advantage to merchants and dealers at Hogansville, Newnan, Palmetto, Fairburn and other localities and traffic consigned thereto; that defendants' said rates from New Orleans to LaGrange, Hogansville, Newnan, Palmetto and Fairburn give them greater aggregate compensation for the transportation of like kind of property, under substantially similar circumstances and conditions, for the shorter distance from New Orleans to LaGrange than for the longer distance over the same line, in the same direction, from New Orleans to Hogansville, Newnan, Palmetto or Fairburn; that the rates charged by defendants as aforesaid are in violation of sections 1, 2, 3 and 4 of the act to regulate commerce. The rates and distances involved are set forth in the complaint, and it is further alleged therein that the lowest rate charged by defendants from New Orleans to LaGrange yields them over 1½ cents per ton for each mile of haul, and that their highest rate between said points affords them nearly 6¾ cents revenue per ton per mile.

" The defendants filed a joint answer, in which they admit that the rates charged are substantially as alleged in the complaint; that their rates to LaGrange amount for each mile to 1.36 cents per ton on the lowest class of frieght (D), and to 6.71 cents per ton on the highest class (1), and that the rates for the shorter distance from New Orleans to LaGrange are more than they charge for the longer distances in the same direction from New Orleans to Hogansville, Newnan, Palmetto and Fairburn; but they deny that the transportation to LaGrange, Hogansville and other points mentioned is conducted under substantially

similar circumstances and conditions, and thereupon further
deny that their said rates are in violation of section 4 of the
statute.   The defendants also deny the unreasonableness, injus-
tice, wrongful discrimination and undue and unreasonable prej-
udice and preference, advantage and disadvantage, alleged by
complainaint under the first, second and third sections of the
act.   The answer contains statements of rates from New Or-
leans to the points in question, and to and from Montgomery,
Ala., and Atlanta, Ga., showing also that the through rates to
LaGrange, Hogansville and other points mentioned are made by
combination of rates to Atlanta with local rates back over the
same line to Fairburn, Palmetto, Newnan, Hogansville and La-
Grange; and it is further averred that the disparities in rates
complained of are caused by a competitive, situation at Atlanta
which compels low rates to that point from New Orleans.   The
competitive circumstances and conditions at Atlanta are stated
in the answer to be the competition of such supply markets as
New Orleans, Baltimore and other northeastern cities, Cincin-
nati, Louisville and other Ohio River cities, and the competition
of carriers from such markets to Atlanta, and to have resulted,
after frequent and disastrous rate wars, in the establishment
of certain relative rates from these various market cities to At-
lanta, a disturbance of which would immediately lead to a rep-
etition of such wars.   Similar competitive conditions are
claimed by the defendants to exist at Montgomery, Ala., through
which freight passes over defendants' through line to LaGrange
and the other points mentioned or referred to in the complaint,
and they further assert that the present relation of rates to
Montgomery and Atlanta must also, under existing circum-
stances, be maintained.   The following extract from the answer
seems to succinctly set out the defendants' position in this case:

"The rates from Atlanta to those stations, respectively, La-
Grange, Hogansville, Newnan, Palmetto and Fairburn, are
fixed by the Georgia Railroad Commission, and are just and
reasonable.   The rates from New Orleans to Atlanta are fixed
by the competition between markets, and the competition be-
tween carriers, as explained above, and are just and reasonable.
The rates charged by respondents are the sum of those rates,

and, therefore, respondents' rates themselves are just and reasonable. The reason that Fairburn, Palmetto, Newnan and Hogansville have lower rates than LaGrange is due alone to the fact that they are nearer to Atlanta, and not to any favoritism or discrimination on the part of the respondents."

The evidence introduced at the hearing before the Commission, in support of the complaint, consisted solely of the testimony of the complainant, which dealt merely with the discrimination alleged to exist against LaGrange in the lesser rates accorded to greater distance points from New Orleans beyond LaGrange towards Atlanta, viz., Hogansville, Newnan, Palmetto and Fairburn. Much evidence—both oral and documentary—was introduced on behalf of the railroads in support of the averments of the answer.

The various contentions contained in the complaint were sustained by the Commission, which made voluminous findings, and issued an order requiring the railroads in general terms to " wholly cease and desist from each and every of the violations of law" found and set forth in its report and opinion. The remaining clauses of the order are set out in the margin.[1]

---

[1] Portion of order of Commission.

It is further ordered and adjudged that said defendants, The Louisville and Nashville Railroad Company, The Western Railway of Alabama and The Atlanta and West Point Railroad Company, do more particularly cease and desist from violations of the law, so found and set forth in said report and opinion as follows, to wit:

1. That said defendants and each of them cease and desist from charging, demanding, collecting or receiving rates for the transportation of the several kinds or classes of freight from New Orleans, La., to LaGrange, Ga., which, as a whole or upon any article of merchandise, are in any respect unreasonable or unjust.

2. That said defendants and each of them cease and desist from charging, demanding, collecting or receiving the following unreasonable, unjust and unlawful rates for the transportation from New Orleans, La., to LaGrange, Ga., of articles embraced in the various classes of their freight classification, that is to say:

| *Classes; rates in cents per* 100 *pounds.* | | | | | | | | | | | *Per barrel.* | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 2. | 3. | 4. | 5. | 6. | A. | B. | C. | D. | E. | H. | F. |
| 143 | 124 | 109 | 93 | 74 | 59 | 41 | 48 | 33 | 1–229 | 66 | 74 | 59 |

The railroads not having obeyed the order, the Commission instituted the present proceeding in equity, in the Circuit Court of the United States for the Southern District of Alabama. That court sustained the order of the Commission. 102 Fed.

3. That said defendants and each of them cease and desist from charging, demanding, collecting or receiving rates or charges for the transportation of freight articles from New Orleans, La., to LaGrange, Ga., which are equal to rates or charges contemporaneously in force over their railroads on like traffic carried from New Orleans through LaGrange to Atlanta, Ga.; added to local rates in force on such traffic for local service over the Atlanta and West Point Railroad back from Atlanta to LaGrange, such combined rates having been found and held in and by said report and opinion of the Commission herein to be unreasonable, unjust, unduly prejudicial and unlawful, and so unreasonable, unjust, unduly prejudicial and unlawful to the extent of such added local charges of the defendant the Atlanta and West Point Railroad Company.

4. That said defendants, and each of them, cease and desist from charging, demanding, collecting or receiving any greater compensation in the aggregate for the transporting of freight articles from New Orleans, La., for the shorter distance to LaGrange, Ga., than they contemporaneously charge, demand, collect or receive for transporting the like kind of freight traffic from New Orleans for the longer distance over the same line in the same direction to Hogansville, or Newnan, or Palmetto, or Fairburn, Ga., the shorter being included within the longer distance.

5. That said defendants, and each of them, cease and desist from charging, demanding, collecting or receiving unreasonable, unjust, unduly prejudicial and unlawful rates for the transportation of freight articles from New Orleans to LaGrange, which are higher than aggregate rates contemporaneously charged, demanded, collected or received by them, or either of them, for the transportation of like kind of freight from New Orleans to Hogansville, or from New Orleans to Newnan, or from New Orleans to Palmetto, or from New Orleans to Fairburn.

6. That said defendants, and each of them, in the transportation of freight articles from New Orleans, cease and desist from charging and collecting rates or compensation which subject complainant and other dealers and consignees at LaGrange, Ga., their traffic, or the city of LaGrange itself, to undue and unreasonable prejudice or disadvantage in any respect whatsoever, and also cease and desist from giving any undue or unreasonable preference or advantage to merchants, dealers and consignees at Atlanta, Fairburn, Palmetto, Newnan or Hogansville, or to their traffic or to either of such cities or localities, namely, Atlanta, Fairburn, Palmetto, Newnan, or Hogansville, as against complainant and said other dealers and consignees at LaGrange, or the city of LaGrange itself.

And it is further ordered and adjudged that said defendants be, and they severally are hereby, recommended to so revise their schedules of

Rep. 709.  The Circuit Court of Appeals reversed the decree of the Circuit Court and remanded the cause, but " without prejudice to the right of the Commission to proceed, upon the evidence already introduced before it, or upon such further pleadings and evidence as it may allow to be made or introduced, to hear and determine the controversy according to law."  112 Fed. Rep. 988.

The cause was thereupon appealed to this court.

*Mr. L. A. Shaver* for appellant.

*Mr. Ed. Baxter* for appellees.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court concurred in the finding of the Commission, that by the exaction of the rates to LaGrange complained of, the third and fourth sections of the act to regulate commerce were violated, and, being unable to say that error clearly appeared in the finding that the first section of the act was also violated, refused to overrule the action of the Commission in any particular.

Whilst the Circuit Court of Appeals announced its con-

---

rates and charges that the aggregate compensation charged and collected by them for the transportation from New Orleans to LaGrange of freight articles embraced in the several freight classes shall not exceed reasonable, just and lawful class rates in cents per hundred pounds and per barrel on Class F as follows, to wit:

| Class.... | 1. | 2. | 3. | 4. | 5. | 6. | A. | B. | C. | D. | E. | H. | F. |
|-----------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Rates.... | 103 | 88 | 77 | 64 | 52 | 42 | 24 | 31 | 24 | 20 | 44 | 49 | 40 |

and that they make corresponding reductions or relatively reasonable and just charges in commodity rates, otherwise known as exceptions to class rates, from New Orleans to LaGrange, aforesaid.

And it is further ordered, that a notice embodying this order be forthwith sent to each of the defendant corporations, together with a copy of the report and opinion of the commission herein, in conformity with the fifteenth section of the act to regulate commerce.

clusions in a *per curiam* opinion, it is fairly inferable from the authorities which are cited in that opinion that the court concluded that the rates charged to LaGrange did not constitute a violation of the third and fourth sections of the act, prohibiting undue discrimination and a greater charge for a shorter than for a longer haul under substantially similar circumstances and conditions. It is also inferable from the argument at bar that the appellate court, so far as the reasonableness *per se* of the rates was concerned, ordered the case to be dismissed, without prejudice to further proceedings, because it was of opinion that in the consideration of this question the Commission had been in effect controlled by its finding, held to have been erroneous, that there had been violations of the third and fourth sections of the act. It was, therefore, deemed that the controversy, in so far as the intrinsic reasonableness of the rates was concerned, should not be foreclosed, but should be left for further consideration and decision upon the evidence already introduced and such additional evidence as might be taken on a further hearing before the Commission if such new hearing was desired.

Whether or not the Circuit Court of Appeals was correct in the conclusions reached by it as above stated, is the question now for decision.

The record convinces us that the appellate court correctly decided that there was no legal foundation for the contention that the third and fourth sections of the act to regulate commerce had been violated. It was and is conceded that the rates on through freight from New Orleans to Atlanta were the result of competition at Atlanta, and that there was hence such a dissimilarity of circumstances and conditions as justified the lesser charge for the carriage of freight from New Orleans to Atlanta, the longer distance point, than was exacted for the haul from New Orleans to LaGrange, the shorter distance point.

The sum of the rate to LaGrange was arrived at by charging the low rate produced by competition at Atlanta, and adding thereto the sum of the local rate back from Atlanta to La-Grange. The same rule was applied to the stations between

LaGrange and Atlanta, each of those stations receiving, there-fore, a somewhat lower rate than LaGrange, although they were located a greater distance from New Orleans and nearer Atlanta. The sum by which the rates from New Orleans to these respective stations between LaGrange and Atlanta were lower than the LaGrange rate, was dependent upon the distance these respective stations were from Atlanta. It was shown, however, and is unquestioned, that, except in a particular to which we shall have occasion hereafter to refer, if the charge had been based on the nearest competitive point south of La-Grange—that is, Montgomery—and there had been added to the competitive rate to Montgomery the local rate from Mont-gomery to LaGrange and the other stations beyond, the freight rates on shipments from New Orleans to LaGrange would have been much greater than the rates now complained of as exces-sive. In other words, the railroads, instead of putting out of view the competition prevailing at Atlanta, when they fixed the rates to the non-competitive points, took the low rates prevailing at Atlanta as a basis and added thereto the local rate from Atlanta, the result being that the places in question were given the advantage resulting from their proximity to Atlanta, the competitive point, in proportion to the degree of such prox-imity.

When the situation just stated is comprehended it results that the complaint in effect was that a method of rate-making had been resorted to which gave to the places referred to a lower rate than they otherwise would have enjoyed. In this situation of affairs, we fail to see how there was any just cause of complaint. Clearly, if, disregarding the competition at At-lanta, the higher rate had been established from New Orleans to the non-competitive points within the designated radius from Atlanta, the inevitable result would have been to cause the traffic to move from New Orleans to the competitive point (Atlanta), and thence to the places in question, thus bringing about the same rates now complained of. It having been es-tablished that competition affecting rates existing at a particular point (Atlanta) produced the dissimilarity of circumstances and conditions contemplated by the fourth section of the act, we

think it inevitably followed that the railway companies had a right to take the lower rate prevailing at Atlanta as a basis for the charge made to places in territory contiguous to Atlanta, and to ask in addition to the low competitive rate the local rate from Atlanta to such places, provided thereby no increased charges resulted over those which would have been occasioned if the low rate to Atlanta had been left out of view. That is to say, it seems incontrovertible that in making the rate, as the railroads had a right to meet the competition, they were authorized to give the shippers the benefit of it by according to them a lower rate than would otherwise have been afforded. True it is, that by this method a lower rate from New Orleans than was exacted at LaGrange obtained at the longer distance places lying between LaGrange and Atlanta, but this was only the result of their proximity to the competitive point, and they hence obtained only the advantage resulting from their situation. It could be no legal disadvantage to LaGrange, since if the low competitive rate prevailing at Atlanta had been disregarded, and the rate had been fixed with reference to Montgomery, and the local rate from thence on, the sole result would have been, as we have previously said, to cause the traffic to move along the line of least resistance to Atlanta, and thence to the places named, leaving LaGrange in the exact position in which it was placed by the rates now complained of.

It is to be observed that it is shown that the local charges on freight moved between Atlanta and LaGrange and the stations intermediate—all of the points being in the State of Georgia—conformed to the requirements of the Georgia State Railroad Commission.

In the report of the Commission a suggestion is found that LaGrange should be entitled to the same rate as Atlanta, because if the carriers concerned in this case in connection with other carriers reaching LaGrange chose to do so, they might bring about competition by the way of a line between Macon and LaGrange which would be equivalent to the competitive conditions existing at Atlanta. We are unable, however, to follow the suggestion. To adopt it would amount to this: that the substantial dissimilarity of circumstances and conditions

provided by the act to regulate commerce would depend, not as has been repeatedly held, upon a real and substantial competition at a particular point affecting rates, but upon the mere possibility of the arising of such competition. This would destroy the whole effect of the act and cause every case where competition was involved to depend, not upon the fact of its existence as affecting rates, but upon the possibility of its arising. What the fourth section of the act to regulate commerce has reference to is an actual dissimilarity of circumstances and conditions, not a conjectural one. Of course, if by agreements or combinations among carriers it were found that at a particular point rates were unduly influenced by a suppression of competition, that fact would be proper to consider in determining the question of undue discrimination and the reasonableness *per se* of the rates at such possible competitive points. As, however, the finding of the Commission concerning unjust discrimination was predicated solely upon the conclusion that the fourth section of the act had been violated, we may put that subject out of view. So far as the reasonableness *per se* of the rate is concerned, we come now to its consideration.

Whilst there was nothing in the evidence taken before the Commission to lend support to the finding that the rates to LaGrange were intrinsically unreasonable, in the report of the Commission considerable reference was made to facts and circumstances which it is to be presumed were upon the files of the Commission and which were deemed to conduce to the conclusion that the rates to LaGrange were unreasonable *per se*. But when the statements on this subject made in the report are considered in connection with the report as a whole and the subjects to which no reference is made in the report are recalled, we think it clearly results that every conclusion reached by the Commission concerning the unreasonableness *per se* of the rates to LaGrange rested wholly upon the error of law committed by the Commission when it decided that the railroad companies were powerless to consider the competitive rates prevailing at Atlanta and to use those rates as a basis for the charges to points within the competitive area in order thereby to give a lower rate to such points than they otherwise would

have enjoyed. Thus, it was held in effect that because the competitive rate to Atlanta was not unduly low, therefore any higher charge to LaGrange, the shorter distance, was unreasonable. And the same misconception was manifested by the reasoning adopted concerning the rates to Hogansville and the other stations between LaGrange and Atlanta, since it was held that because the charges to these points were lower than to LaGrange, therefore the rates to the last named point were unreasonable *per . se.* Both of these conclusions, however, but held that if the carriers elected to meet the competitive rate at Atlanta they must at once correspondingly reduce their rates to all shorter distance and non-competitive points. But such a ruling was equivalent to overthrowing the settled construction of the Interstate Commerce Act allowing carriers to charge the lesser rate for the longer than for the shorter distance, if at the futher point the lesser rate was justified by a substantial dissimilarity of circumstances and conditions there prevailing, consequent upon real competition. A clause in the order. of the Commission makes it clear that no independent finding as to the unreasonableness of the rates was made, since it allows the carriers to continue to charge the rates complained of to LaGrange, provided no higher rates were charged to the more distant points between there and Atlanta. · The inconsistency between such order and the conclusion that the rates to the shorter distance point were unreasonable *per se* was pointed out in *East Tennessee, Virginia & Georgia Railway Co.* v. *Interstate Commerce Commission,* 181 U. S. 1, where it was said (p. 23):

"A decree which ordered the carriers to desist from charging a greater compensation for the lesser than for the longer haul, would be in no way responsive to the conclusion that the rate for the lesser distance was unreasonable in and of itself. Such a decree would in effect authorize the carrier to continue to charge at its election a rate which was in itself unreasonable to the shorter point."

And when, in connection with the matters just stated, it is. observed that the report of the Commission makes no reference whatever to any intrinsic disparity between the LaGrange

rates and those prevailing at other non-competitive points between New Orleans and LaGrange, no room in reason is left to sustain the view that the Commission could have held that the rates to LaGrange were in and of themselves unreasonable, irrespective of the competitive condition prevailing at Atlanta, and the arrangement of rates which arose from it which formed the main subject of the complaint.

We conclude that, under the circumstances disclosed by the record, the Circuit Court of Appeals committed no error in refusing to enforce the order of the Commission and in remanding the case to that body for such independent consideration of the question of the reasonableness *per se* of the rates as the ends of justice might require.

It remains only to consider a special question concerning the third and fourth sections of the act, which was passed over in an earlier part of this opinion. As has been said, the complaint made before the Commission alleged a disparity and discrimination alone because of the difference of rates between LaGrange and the points beyond to Atlanta, and the report of the Commission in effect dealt only with such alleged grievances. However, in the course of its report, it was remarked by the Commission that Opelika, which was 38 miles south of LaGrange, was a competitive point, and that if Opelika was used as the basis for calculating the rate to LaGrange, a slightly lesser rate on some articles would be enjoyed by LaGrange than was the case by basing the rate on Atlanta as the nearest competitive point. The Commission, however, would seem to have attached no great importance to the matter which it thus noticed, since nothing in the order entered by it was responsive to the suggestion. It was stated, however, at bar that in the argument of the case in the Circuit Court of Appeals that court directed the attention of the counsel of the railroads to the fact that, even if their theories of the case were sound and were approved, there was a suggestion in the report of the Commission which indicated that Opelika and not Atlanta was the proper basing point for fixing the rates to LaGrange, as thereby LaGrange would enjoy on some classes of freight a slightly lower rate than resulted from using Atlanta as the

basic point.　It was also conceded at bar by counsel for all
parties that when this suggestion was made the counsel for the
railroad companies immediately declared that such fact had
escaped attention, that it would at once be brought to the no-
tice of the railroad companies, and a change of rates would be
immediately put into effect upon that basis.　And the brief of
counsel for the Commission states that a modified tariff, based
on Opelika, was put into operation by the railroad companies
in May, 1900, immediately after the argument of the case in
the Circuit Court of Appeals, and has been continued in force
from that time to this, the decree below having been entered
more than one year after the submission of the cause.　It is,
however, now insisted that the change made by the railway
companies to conform to the development as to Opelika is a
confession that there was error in the action of the Circuit
Court of Appeals, and therefore requires that the decree of
that court should be at least in part reversed.　It would be,
it is said, indeed dangerous to allow a railway company to ex-
act illegal rates, and persist in doing so even after the order of
the Commission had been issued, and then escape the conse-
quences of its wrongdoing by at the last hour changing its
rates in order to prevent the entry of a decree against it.　The
reasoning has abstract force, but its application to the case in
hand is devoid of merit, since neither in the complaint made be-
fore the Commission nor in the evidence introduced for the
complainant was any claim made that wrong had been done
because of a combination of rates based on Atlanta instead of
Opelika.　Indeed, the relief sought by the complaint and that
accorded by the Commission was inconsistent with the theory
that the rates should be based on either Opelika or Atlanta.　As
the altered tariff based on Opelika had been in force more than
one year prior to the entry of the decree below, the court
doubtless considered it unnecessary to provide for its continu-
ance.　The record does not disclose, nor was it suggested, that
any application was made to the Circuit Court of Appeals to
modify its decree so as to direct the continuance of such new
tariff, both parties evidently acting on the reasonable assump-
tion that it was an accomplished fact.　Under these circum-

stances, we do not think a formal modification of the decree of the Circuit Court of Appeals is required; and that decree is therefore

*Affirmed.*

Mr. Justice Harlan dissents.