LOUISVILLE & N. R. CO. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

(District Court, W. D. Kentucky. July 3, 1915.)

No. 18.

1. COMMERCE ⬅98—INTERSTATE COMMERCE COMMISSION—HEARINGS AND REVIEW.

The power expressly conferred on the Interstate Commerce Commission by Interstate Commerce Act Feb. 4, 1887, c. 104, § 4, 24 Stat. 38, as amended by Act June 18, 1910, c. 309, § 8, 36 Stat. 547 (Comp. St. 1913, § 8566), to authorize a railroad carrier to charge less for a longer than for a shorter distance in special cases, on application and after investigation, clearly implies that the question shall be determined on testimony and after a hearing, and necessarily involves the exercise of judgment and discretion. If an order denying such an application is contrary to the evidence, or not supported by any evidence, the carrier is entitled to relief in the courts, but the weight to be given to evidence is peculiarly for the Commission, as a body experienced in such matters, and on a review of its orders its findings of fact will always be taken as prima facie correct and in most instances as conclusively so.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 148; Dec. Dig. ⬅98.]

2. COMMERCE ⬅86—INTERSTATE COMMERCE COMMISSION—APPLICATION FOR ORDER SUSPENDING LONG AND SHORT HAUL PROVISION—BURDEN OF PROOF.

On an application for an order granting such authority, the operation of which would be to create an exception to the express inhibition of the statute, the burden rests on the carrier to show that the case is a special one, and so within the power of the Commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 140; Dec. Dig. ⬅86.]

3. COMMERCE ⬅88—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS.

General allegations in a petition by a railroad company for review of orders of the Interstate Commerce Commission that their effect would be to deprive petitioner of its property without due process of law *held* not

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

supported by such specifications of fact or evidence as to show the invalidity of the orders.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. ☞88.]

In Equity. Suit by the Louisville & Nashville Railroad Company against the United States in which the Interstate Commerce Commission intervened. On motion for a temporary injunction. Denied and bill dismissed.

See, also, 207 Fed. 591.

Henry L. Stone and W. A. Colston, both of Louisville, Ky., for plaintiff.

Blackburn Esterline, of Washington, D. C., for the United States.

Jos. W. Folk and Edward W. Hines, both of Washington, D. C., for Interstate Commerce Commission.

Before WARRINGTON, Circuit Judge, and EVANS and HOLLISTER, District Judges.

PER CURIAM. The Louisville & Nashville Railroad Company (which we shall call the plaintiff), on December 17, 1910, in due form filed its—

"application before the Interstate Commerce Commission for relief under the long and short haul provisions of the fourth section of the act to regulate commerce."

This application was numbered 1952. It had reference to the freight rates to be charged by the plaintiff throughout its entire system, and might affect those charged throughout the southeastern part of the United States. It was of great length and elaboration, and related to many hundred places. Its purpose was altogether proper, but inevitably it would take a very long time for the Interstate Commerce Commission (which we shall call the Commission) to complete its consideration of every phase of it, and as some of the separate questions involved might be urgent and might be entirely disconnected from other phases of it, necessarily it would result that such separate matters might be investigated and settled before the consideration of others had begun. This would come from the nature of the application itself.

The record does not disclose, nor does it appear to be material, why that part of plaintiff's general application No. 1952, which related to long and short haul rates at Bowling Green, Ky., was taken up by the Commission so promptly, but an investigation into that feature of the application was, in fact, in progress when, on August 8, 1911, the Bowling Green Business Men's Protective Association (which we shall call the Protective Association) filed before the Commission its complaint (No. 4310) against the Louisville & Nashville Railroad Company and many other carriers, in which, after stating the rates fixed so far as they affected Bowling Green, Ky., it averred that those rates were unjust and unreasonable and in violation of section 1 of the act to regulate commerce, and were unduly prejudicial to the interests of Bowling Green and unduly preferential to the interest of the cities

of Clarksville and Nashville, Tenn., and Louisville, Ky., and, in a majority of instances, were greater charges for a shorter distance than for a longer one.

The questions arising alike upon that phase of the plaintiff's application which involved rates at Bowling Green and upon the complaint of the Protective Association were, to some extent, heard together, the parties consenting to the reading at both hearings of certain testimony taken on the plaintiff's application before the Protective Association had filed its complaint. After hearing all parties upon the questions thus involved, the Commission returned its findings and decision, in which it dealt both with the application of the plaintiff and the complaint of the Protective Association (see 24 Interst. Com. Com'n R. 228), and thereupon entered certain orders made effective September 1, 1912 (later changed to October 15th), which are hereinafter set forth in the margin, and which required the plaintiff to abstain and desist for a period of two years from charging, demanding, collecting, or receiving any higher rates for the transportation of traffic from or to certain named points than is done from or to other certain points. The plaintiff subsequently filed an elaborate petition for a rehearing of these rulings.

On October 8, 1912, the Commission entered orders which, except as we have numbered them, are as follows:

"At a General Session of the Interstate Commerce Commission, Held at Its Office, in Washington, D. C., on the 8th day of October, A. D. 1912.

### "Fourth Section Order No. 1361.

"In the Matter of That Portion of Application No. 1952 of the Louisville & Nashville Railroad Company, by A. R. Smith, Its Third Vice President, for Itself and on Behalf of Its Connections, for Relief from the Provisions of the Fourth Section of the Act to Regulate Commerce, as Amended June 18, 1910, Respecting Class and Commodity Rates.

### "Class and Commodity Rates.

"Upon further consideration of the record in the above-entitled case:

"(1) It is ordered, that the order heretofore entered on June 4, 1912, in said case be, and the same is, hereby amended to read as follows:

"(2) This application, No. 1952, filed December 17, 1910, asks, among other things, for authority to continue to charge lower rates to and from Louisville, Ky., Clarksville and Nashville, Tenn., than are concurrently in effect on like traffic to and from Bowling Green, Ky. A hearing having been held upon this application, in so far as it relates to rates on freight traffic to and from the points hereinbefore described, and full investigation of the matters and things involved therein having been had, and the Commission having, on the 4th day of June, 1912, made and filed a report containing its findings of fact and conclusions thereon, which said report is herein referred to and made a part hereof.

"(3) It is ordered, that that portion of said application, No. 1952, which seeks authority to continue to charge lower rates on traffic through Bowling Green, Ky., to and from Nashville, Tenn., than are contemporaneously in effect on like traffic to and from Bowling Green, Ky., be, and the same is hereby, denied, effective December 1, 1912.

"(4) It is further ordered, that that portion of said application, No. 1952, which seeks authority to continue to charge lower rates on oranges from Jacksonville, Fla., through Bowling Green, Ky., to Louisville, Ky., than are contemporaneously in effect on like traffic to Bowling Green, Ky., be, and the same is hereby, denied, effective December 1, 1912.

"(5) It is further ordered, that the petitioners herein be, and they are hereby, authorized to continue to charge lower rates on sugar from New Orleans, La., through Bowling Green, Ky., to Louisville, Ky., than are contemporaneously in effect on like traffic to Bowling Green provided that the present rates to Bowling Green are not exceeded.

"(6) The Commission does not hereby approve any rates that may be filed under this authority, all such rates being subject to complaint, investigation, and correction if in conflict with any other provision of the act."

On the same day in case No. 4310 of the Protective Association against the Railroad Company the Commission overruled the Railroad Company's petition for a rehearing, although it set aside its orders of June 4th. On the day immediately preceding the entry of the latter orders the plaintiff, without awaiting the result of its petition for a rehearing, commenced this action in equity in the Commerce Court against the United States as respondent, and in which the Interstate Commerce Commission subsequently intervened, seeking to enjoin the enforcement of the Commission's orders of June 4, 1912. On November 11, 1912, the plaintiff filed a supplemental petition, showing that the orders of June 4th had been vacated; that its petition for a rehearing had been overruled, and that the Commission had, on October 8th, made the orders in the fourth section application case which are copied above. Subsequently the Commerce Court (Louisville & N. R. Co. v. U. S., 207 Fed. 591), holding that the orders entered by the Commission on October 8; 1912, were not such as it could review, dismissed the action. Pending an appeal from that decision, the Supreme Court, in the Intermountain Rate Cases, 234 U. S. 476, 34 Sup. Ct. 986, 58 L. Ed. 1408, took a view of the question of jurisdiction different from that of the Commerce Court, and on March 1, 1915, upon the appellee's confessing the error, the Supreme Court reversed the decree in this case. Meantime the existence of the Commerce Court having terminated, the case came to this court when the mandate of the Supreme Court was sent down to it in April, 1915.

The third and fourth of the orders of the Commission (as we have numbered them) made October 8, 1912, denied to the plaintiff parts of the relief from the provisions of the long and short haul clauses of section 4 for which it had applied in respect to Bowling Green, Ky., though the fifth of those orders gave relief as to another part. The complaint of the Protective Association, on the other hand, was largely based upon that portion of section 3 of the act to regulate commerce, which is in this language:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

This complaint made charges against the carrier and its rates which, if sustained, would have led to a readjustment of those rates and possibly other relief. But while on June 4th the Commission made orders which might have brought about that result, they were set aside on October 8th before they became effective, and so far at least as the

record in this case shows (but see Bowling Green Business Men's Protective Ass'n of Bowling Green, Ky., v. Louisville & N. R. Co., 31 Interst. Com. Com'n R. 1), the matter has been at a standstill ever since. Certainly no decision which became effective upon the Protective Association's complaint was rendered, and no injury, in the legal sense, had come to the plaintiff by anything done upon the complaint of the Protective Association. Nevertheless the plaintiff in its supplemental petition says:

"That as it appears from the record that the Commission was of the opinion that the findings and orders previously made by it and complained of in the original petition herein were improper, the Commission ought, in justice and equity, to have granted the petition for rehearing in the said proceedings, which petition for rehearing the Commission has denied, and that since it appears from the Commission's own action that the findings, conclusions, and orders of the Commission made upon the hearings had were erroneous and improper, sufficient reason was made to appear why the rehearing asked should have been granted, and it was an abuse of discretion on the part of the Commission to refuse such rehearing; and the orders made by the Commission on October 8, 1912, as hereinabove set forth, which deny the said petition for rehearing, and which deny in part relief under the fourth section of the act to regulate commerce applied for, are orders made without the full hearing and investigation contemplated by the act to regulate commerce, and are unlawful on that account."

In the same pleading the plaintiff further avers as a foundation for the relief sought that:

"The orders made and issued by the Interstate Commerce Commission on the 8th day of October, A. D. 1912, as hereinabove set forth, including the orders now complained of, were made and issued with the design and intent to accomplish the following purposes: (a) To destroy the existing cause of action sought by petitioner to be enforced in this cause pending in this honorable court; (b) to deprive this honorable court of all jurisdiction over this cause and the subject-matter thereof by so changing the form of the orders as to accomplish substantially the same results sought to be accomplished by the orders in the original petition herein complained of, and yet have it appear that the orders issued by the Commission are negative orders, or orders resting solely within the discretion of the Commission and not subject to review by this honorable court; (c) to prevent all judicial investigation and determination of the reasonableness, fairness, and validity of the orders now complained of."

These averments in the plaintiff's supplemental petition were specifically denied in the answer. Moreover, it was there averred that the orders of the Interstate Commerce Commission sought to be set aside and annulled, the report rendered in connection therewith and relating thereto, and the findings of fact in said report and order contained were made upon due investigation and after a full hearing and upon substantial and sufficient evidence and due consideration thereof.

No direct testimony was offered in support of the charges made in the plaintiff's supplemental petition which we have copied, and it may suffice to say that the court cannot indulge any presumption that they are well founded. It is true that some confusion has been introduced into the case by the substitution of the orders of October 8th for those of June 4th. For example, counsel for plaintiff insist that the orders of October 8th are "third section orders made on a fourth section application." This insistence overlooks the fact that the case of the

Protective Association, a third section case, and plaintiff's application, a fourth section case, were heard together, and that it was agreed by counsel that the evidence was, so far as applicable, to be considered in each of the cases. In determining that question the court will be at liberty to examine the whole record and draw such conclusions therefrom as may be proper, but that is essentially different fom saying that there is anything to warrant the conclusion that the Commission in what it did was actuated by any of the wrongful motives imputed to it in the plaintiff's supplemental petition.

Coming then to the consideration of the validity of the third and fourth of the orders of October 8, 1912, we are told by the counsel for the plaintiff in their brief that their main contentions are that the two orders complained of should be annulled and their enforcement enjoined: First, "because the order complained of is not such a negative order or order of denial as the Commission had power to issue under the fourth section of the act to regulate commerce;" and, second, "that even if the order complained of was and is a negative order or an order of denial, such as is contemplated by the fourth section of the act to regulate commerce, the order is void because it is contrary to the indisputable nature of the evidence and is not supported by any evidence." In addition to the main contentions thus stated by the plaintiff's counsel other reasons are urged, but they appear to be of a minor and subsidiary nature.

The fourth section of the act in terms forbids a carrier subject to the provisions of the act to charge or receive any greater compensation in the aggregate for the transportation of property for a shorter than for a longer distance over the same line in the same direction, the shorter being included in the longer distance, etc., provided that upon application to the Interstate Commerce Commission the carrier may, in special cases after investigation, be authorized by the Commission to charge less for longer than for shorter distances for the transportation of property. As we have seen, the plaintiff's application, No. 1952, was on its face one "for relief under long and short haul provisions of the fourth section of the Act to Regulate Commerce," and paragraph 1 of the application begins with these words:

"For authority to continue and establish rates for the transportation of freight between points hereinafter specified lower than rates concurrently in effect from or to or between intermediate points."

Among the points included in the section of the application referred to is Bowling Green, Ky. By its application No. 1952, so far as it is now under consideration, the plaintiff attempted to present a "special case" in which it should, in respect to Bowling Green, Ky., be authorized by the Commission under section 4 of the act to charge less for a longer than for a shorter distance for the transportation of property. The effect of the third and fourth of these orders is a denial of such authorization, which leaves the plaintiff no alternative but to obey that provision of section 4 which forbids the charging of less for a longer than for a shorter distance. Or to state it more in detail, the effect of these orders is: (a) To deny plaintiff's applica-

tion for authority to continue to charge less for a longer than a shorter distance on traffic going through Bowling Green, and which had come from or was going to Nashville, than it charges on like traffic which stops at or which starts from Bowling Green; (b) and to also deny plaintiff's application for authority to continue to charge less for a longer than a shorter distance on oranges from Jacksonville, Fla., which passed through Bowling Green to Louisville than on like traffic which stopped at Bowling Green; but (c) to grant plaintiff authority to continue to charge lower rates on sugar from New Orleans, which passes through Bowling Green, than is charged on like traffic which stops there. That is to say, the Commission refused to relax the rule as to long and short haul charges prescribed in section 4 in the first two instances, but consented to do so in the last. That the Commission had power to do all this after investigating plaintiff's application No. 1952 we do not doubt. And that it failed to act on other phases of the fourth section application No. 1952 cannot per se invalidate the orders actually made.

When the orders of October 8th analyzed above are compared with those of June 4th (copied in the margin [1]) we see how much the Com-

---

[1] NOTE.—At general session of the Interstate Commerce Commission, Held at its Office in Washington, D. C., on the 4th Day of June, A. D., 1912.

No. 4310.

Bowling Green Business Men's Protective Association of Bowling Green, Ky., v. Louisville & Nashville Railroad Company and Others.

Fourth Section Application No. 1952.

This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

1. It is ordered, that the above-named defendants, according as they participate in the traffic, be, and they are hereby, notified and required to cease and desist, on or before the 1st day of September, 1912, and for a period of two years thereafter to abstain, from charging, demanding, collecting, or receiving any higher rates for the transportation of traffic from New York, N. Y., and related points, to Bowling Green, Ky., than those contemporaneously maintained over their lines on the same traffic from the same points of origin to Nashville, Tenn., when such traffic passes through said Bowling Green.

2. It is further ordered that said defendants, according as they participated in the traffic, be, and they are hereby, notified and required to establish, on or before the 1st day of September, 1912, and for a period of two years thereafter to maintain and apply to the transportation of traffic from New York, N. Y., and related points, to Bowling Green, Ky., rates which shall not exceed those contemporaneously maintained over their lines on the same traffic from the same points of origin to Nashville, Tenn., when such traffic passes through said Bowling Green.

3. It is further ordered that said defendants, according as they participate in the traffic, be, and they are hereby, notified and required to cease and desist, on or before the 1st day of September, 1912, and for a period of two years thereafter to abstain from charging, demanding, collecting, or receiving any higher rates for the transportation of oranges from Jacksonville, Fla., to Bowling Green, Ky., than those contemporaneously maintained over their lines on the same commodity from said Jacksonville to Louisville, Ky.

4. It is further ordered that said defendants, according as they participate

225 F.—37

mission changed its views. Plaintiff's petition for a rehearing directed against the orders of June 4th, was, in form, overruled, though we cannot know precisely what the reasoning was which actuated the Commission in making the change, inasmuch as it made no statement on the subject, but we may fairly and reasonably conclude that while it denied the petition for a rehearing, it became convinced of some error or defect in its earlier orders, and therefore changed or modified them to the later form. This is all the more apparent. when we see that the orders of June 4th unquestionably were not made under section 4 of the act, but under other sections. It is, we think, fair to assume that the petition for a rehearing aided in producing results to that extent, whatever effect it may have had on the complaint of the Protective Association, which apparently was left undisposed of.

Whether or not the orders complained of are or are not negative in character or form, it must be regarded as the settled law of this case that they may be reviewed by the court and their enforcement enjoined if proper grounds therefor are made to appear. This results from the fact that when the case reached a trial in the Commerce Court the orders of June 4th complained of in the plaintiff's original petition had been eliminated by being rescinded by the Commission, thus leaving in contention only the orders of October 8th, complained of in the supplemental petition. The Commerce Court, holding that it had no jurisdiction to afford any relief as to them, dismissed plaintiff's petition, and plaintiff appealed to the Supreme Court. There the appellees confessed error, and the Supreme Court, accepting that confession, reversed the judgment of the Commerce Court. It is altogether useless to discuss whether the Supreme Court under other circumstances would have applied to the orders in question the rule as to jurisdiction announced in the Intermountain Rate Cases. We are bound to regard that rule as having already been applied by that court to this case.

As showing the settled general principles upon which cases to enjoin the enforcement of the orders of the Interstate Commerce Commis-

in the traffic, be, and they are hereby, notified and required to establish, on or before the 1st day of September, 1912, and for a period of two years thereafter to maintain, and apply to the transportation of oranges from Jacksonville, Fla., to Bowling Green, Ky., rates which shall not exceed those contemporaneously maintained over their lines on the commodity from said Jacksonville to Louisville, Ky.

5. It is further ordered that said defendants, according as they participate in the traffic, be, and they are, hereby, notified and required to cease and desist, on or before the 1st day of September, 1912, and for a period of two years thereafter to abstain from charging, demanding, collecting, or receiving, any higher rates for the transportation of traffic from Bowling Green, Ky., to Montgomery, Ala., than those contemporaneously maintained over their lines on the same traffic from Clarksville, Tenn., to Montgomery, Ala.

6. And it is further ordered, that said defendants, according as they participate in the traffic, be, and they are hereby, notified and required to establish, on or before the 1st day of September, 1912, and for a period of two years thereafter maintain, and apply to the transportation of traffic from Bowling Green, Ky., to Montgomery, Ala., rates which shall not exceed those contemporaneously maintained over their lines on the same traffic from Clarksville, Tenn., to Montgomery, Ala."

sion proceed, a few of the authorities may be noted. In the Intermountain Rate Cases, 234 U. S., at page 485, 34 Sup. Ct., at page 991 (58 L. Ed. 1408), after alluding to the fact that the amendment of the Interstate Commerce Act of June, 1910, had taken from the carrier certain powers in respect to the long and short haul provision, and had transferred the same to the Interstate Commerce Commission, the court said:

"But while the public power, so to speak, previously lodged in the carrier, is thus withdrawn and reposed in the Commission, the right of carriers to seek and obtain, under authorized circumstances, the sanction of the Commission to charge a lower rate for a longer than for a shorter haul, because of competition or for other adequate reasons, is expressly preserved, and, if not, is, in any event, by necessary implication, granted. And as a correlative the authority of the Commission to grant on request the right sought is made by the statute to depend upon the facts established and the judgment of that body in the exercise of a sound legal discretion as to whether the request should be granted compatibly with a due consideration of the private and public interests concerned, and in view of the preference and discrimination clauses of the 2d and 3d section."

In Interstate Commerce Commission v. Union Pacific Railroad Co., 222 U. S. at page 547, 32 Sup. Ct. at page 110, 56 L. Ed. 308, it was said:

"There has been no attempt to make an exhaustive statement of the principle involved, but in cases thus far decided, it has been settled that the orders of the Commission are final unless: (1) Beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law; but questions of fact may be involved in the determination of questions of law, so that an order, regular on its face, may be set aside if it appears that (4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power. Int. Com. Com. v. Ill. Cent., 215 U. S. 452, 470 [30 Sup. Ct. 155, 54 L. Ed. 280]; Southern Pacific v. Int. Com. Com., 219 U. S. 433 [31 Sup. Ct. 288, 55 L. Ed. 283]; Int. Com. Com. v. Northern Pacific, 216 U. S. 538, 544 [30 Sup. Ct. 417, 54 L. Ed. 608]; Int. Com. Com. v. Alabama Midland Ry. Co., 168 U. S. 144, 174 [18 Sup. Ct. 45, 42 L. Ed. 414]."

And in United States v. Louis. & Nash. R. R. Co., 235 U. S. 321, 35 Sup. Ct. 115, 59 L. Ed. 245, the court said, in cases like this, that:

"It must be determined whether the action of the Commission was repugnant to the Constitution, in excess of the powers which that body possessed, or, what is equivalent thereto, was wholly unsustained by proof."

Section 4 of the act as amended June 18, 1910, reads:

"That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through route than the aggregate of the intermediate rates subject to the provisions of this act; but this shall not be construed as authorizing any common carrier within the terms of this act to charge or receive as great compensation for a shorter as for a longer distance: Provided, however, that upon application to the Interstate Commerce Commission such

common carrier may in special cases, after investigation, be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section: Provided further, that no rates or charges lawfully existing at the time of the passage of this amendatory act shall be required to be changed by reason of the provisions of this section prior to the expiration of six months after the passage of this act, nor in any case where application shall have been filed before the Commission, in accordance with the provisions of this section, until a determination of such application by the Commission.

"Whenever a carrier by railroad shall in competition with a water route or routes reduce the rates on the carriage of any species of freight to or from competitive points, it shall not be permitted to increase such rates unless after hearing by the Interstate Commerce Commission, it shall be found that such proposed increase rests upon changed conditions other than the elimination of water competition."

It is thereby expressly made unlawful for the carrier to charge more for a shorter than for a longer distance. That is the general rule Congress deemed it wise to prescribe, but the Commission was empowered, after investigation, to relax the general rule by authorizing the carrier to charge less for longer than for shorter distance in special cases. This necessarily involves the exercise of judgment and discretion.

Bearing in mind the statement of plaintiff's counsel that their "main contentions" are: First, that the orders of the Commission were not such as it had power to make; and, second, that they were void because contrary to the indisputable nature of the evidence and not supported by any evidence—it will be sufficient to say as to the first of these contentions that it is without merit because the Commission, by the express terms of section 4, had power to grant or deny the authorization for which the plaintiff applied. If, however, the orders complained of were contrary to the indisputable nature of the evidence, then the second of plaintiff's main contentions is sound, and the orders made under such conditions, being arbitrary and unjust, cannot be sustained, and plaintiff would be entitled to relief. Although the briefs brought to our attention have been extremely voluminous, we confess some doubt as to what the plaintiff's counsel mean by the phrase "the indisputable nature of the evidence" as applicable to the record before us. As much of the evidence is of a nature that may be disputed, and as some of it certainly has been disputed, we suppose the phrase must be limited to such physical facts as pertain to the existence, the course, and the characteristics of the Cumberland, Green, and Barren rivers, and the location upon one of Nashville, Tenn., and upon another of Bowling Green, Ky., and also to the physical facts that there are railroads other than plaintiff's · operating at Nashville, though there is no other operating at Bowling Green. These incontestable facts appear, but, though most important, there is other evidence in the record to which the term "indisputable" is not applicable.

[1] Coming then to the consideration of the evidence as a whole, we may premise several general observations.

1. The requirement of section 4 that such authorization shall be made, if at all, "after investigation" clearly implies that the question shall be determined upon testimony and after a hearing.

2. The "value of such evidence necessarily varies according to the circumstances, but the weight to be given it is peculiarly for the body experienced in such matters and familiar with the complexities, intricacies, and history of rate making in each section of the country." I. C. C. v. Louis. & Nash. R. R., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; Louis. & Nash. R. R. v. United States and I. C. C., 238 U. S. 1, 35 Sup. Ct. 696, 59 L. Ed. ——, opinion of Supreme Court delivered June 1, 1915.

3. It has been settled by repeated decisions of the Supreme Court that findings of fact by the Commission are always prima facie correct and in most instances conclusively so. United States v. L. & N. R. R. Co., 235 U. S. 320, 35 Sup. Ct. 113, 59 L. Ed. 245; United States v. Louis. & Nash. R. R. Co., 236 U. S. 318, 35 Sup. Ct. 363, 59 L. Ed. 598.

[2] In considering the claims of counsel for the plaintiff that there is no evidence to support the orders in dispute, it is to be borne in mind that the purpose of the application of plaintiff was to be relieved from the operation of the long and short haul clause of section 4 of the statute. Such relief could be granted only upon a showing of facts which would constitute a special case within the meaning of the proviso of that section. This plainly cast upon the plaintiff the burden of proof; for the effect of granting the application would necessarily operate to create an exception to the express inhibition of the statute. As the Commission said in Railroad Commission of Nevada v. S. P. Co., 21 Interst. Com. Com'n R. 329, 341:

"(3) That it must be affirmatively shown by the carriers seeking such exception that injustice will not be done to intermediate points by allowing lower rates at the more distant points.

"(4) That the intendment of the law is to make its prohibition of the higher rate for the shorter haul a rule of well-nigh universal application, from which this Commission may deviate only in special cases, and then to meet transportation circumstances which are beyond the carriers' control; that is to say, a carrier shall not prefer the more distant point by giving it the lower rate because of any policy of its own initiation, but if at the more distant point it finds a condition to which it must conform under the imperious law of competition if it would participate in traffic to that point, it may discriminate against the intermediate point without violating the law, provided it establishes such necessity before the Commission."

Examination of the record shows that substantial evidence was presented to the Commission upon all the issues involved. The conditions prevailing at Bowling Green, as also those at Nashville and Clarksville, were elaborately described by witnesses called by the Protective Association of Bowling Green and the Railroad Company. The Railroad Company sought, for example, to show that the rates at Nashville were fixed by both rail and water competition, and that while the rail rates to and from Bowling Green were higher than those prevailing between Louisville and Nashville over the same road and in either direction, the intermediate rates were reasonable, and that no evidence was offered to the contrary. This latter feature was met, however, by testimony and correspondence which tend to show that the Railroad Company controlled the Bowling Green river rates as well as its own rates. Interstate Com. v. Louisville, etc., R. R., 190 U. S. 273, 283, 23 Sup. Ct.

687, 47 L. Ed. 1047. Again, the competitive conditions, as claimed by the Railroad Company to exist at Nashville, were met by evidence tending to show that the rail competition at that point was negligible, that the competition afforded by the Cumberland river was potential rather than actual, and that the Barren and Green rivers, if their navigation were not interfered with by the plaintiff, would furnish better and more continuous facilities for navigation than the Cumberland, and would place Bowling Green in substantially the same situation as that of either Nashville or Clarksville. The evidence was exhaustively considered in the report of the Commission, and it would serve no useful purpose to repeat what was shown there. It is sufficient to say that the evidence was conflicting, and that we should not be warranted in disturbing the conclusions of fact reached by the Commission.

It is not our province to weigh the evidence (L. & N. R. R. Co. v. Behlmer, 175 U. S. 674, 675, 20 Sup. Ct. 209, 44 L. Ed. 309), or to do more than ascertain whether there was, in fact, substantial evidence heard and considered by the Commission, for if that were the case, its orders are beyond our control.

[3] The fifth of the amendments to the Constitution of the United States covers the great and fundamental proposition that no person shall be deprived of life, liberty, or property without due process of law, and one of the points made by the plaintiff's counsel in one of their briefs is thus expressed:

"The Commission's order is broader than the fourth section hearings held in connection therewith, and hence deprives petitioner of its property without due process of law."

We cannot see that the constitutional provision referred to has a very acute bearing upon the case, nor recall that the proposition was pressed at the argument, but as an objection of the character indicated should always receive the court's attention, we have analyzed plaintiff's pleading to see upon what averments the contention is based.

In its supplemental petition which covers the plaintiff's allegations against the two orders of October 8, 1912, and limits this litigation to them, it is insisted, that their enforcement will result in taking plaintiff's property without due process of law, in contravention of the Constitution of the United States and more particularly in contravention of the fifth amendment thereto, and the pleading specifies: First, that this will result from the fact that those orders and the testimony upon which they were based were broader than plaintiff's fourth section application; second, that the Commission, by its course, unwarrantably and unlawfully attempted to deprive plaintiff of the right and opportunity for a judicial review of those orders; third, that they deprive the plaintiff of "the right to have and enjoy its property without being deprived thereof without due process of law"; and, fourth, that the enforcement of the orders will result in a loss of revenue on business going from and coming to Bowling Green of at least $31,000 per annum. While these general averments are made by plaintiff, there are no specifications of the facts from which we could determine whether or not the rates which would be put in force as a result of the orders complained of would be such as to deprive

the plaintiff of a fair return upon the money invested. In short, while a general complaint is made of deprivation of property without due process of law, no allegations are found in the pleading showing that the rates will be confiscatory if put in operation. In these essential respects there is no sufficient showing, and certainly none in detail, either in the pleading or in the testimony.

We have shown how the two orders of October 8th were, in our opinion, responsive to the plaintiff's fourth section application 1952. It is quite true that part of the testimony was heard by the Commission upon that application, and at the same time upon the Protective Association's complaint No. 4310, which was mainly based upon other sections of the act, but this course was pursued for convenience and by consent of parties. While the testimony upon the Association's complaint and that upon plaintiff's application was probably all considered together, we cannot see nor say that the former unduly influenced the Commission in its decision upon the latter. Both cases by common consent were heard together, and what we have found is that there was substantial testimony heard by the Commission upon plaintiff's fourth section application. If literally it be true that the testimony actually heard by the Commission was broader than plaintiff's fourth section application, that situation grew out of the consent referred to, though it does not follow because it was thus made broader that no substantial testimony was heard and considered which had relation to that application.

Nor, as already indicated, can we find any evidence which tends to sustain plaintiff's contention that the orders complained of resulted from any course pursued by the Commission in an attempt to deprive plaintiff of a right and opportunity for judicial review of those orders. The fact that we are now reviewing those orders shows that, even if the Commission had such purpose, it was futile and affords no basis for an injunction.

Only one other of the plaintiff's many contentions seems to require separate notice. It is that the order of the Commission is based exclusively upon the theory of estoppel. If we assume that the Commission has no power for that reason to decide a question coming before it, we nevertheless find nothing in the record, nor in the Commission's opinion (24 Interst. Com. Com'n R. 228), which shows plaintiff's assertion to be well founded. This contention must therefore be overruled.

We must, upon all the considerations expressed, hold that the orders of the Commission made October 8, 1912, are beyond the control of the court, because neither of those orders comes within the limits of our powers as settled by the decisions of the Supreme Court in the cases we have cited and many others.

At the final hearing of the case in this court the plaintiff offered to read as evidence: (1) The testimony of A. R. Smith, taken in this case at the hearing before the Commerce Court; (2) the affidavit of C. B. Compton filed with the Commerce Court while the case was pending there; and (3) a certified copy of the stenographer's notes of certain testimony taken April 14, 1914, in the Protective Association's

Case No. 4310, including certain parts of fourth section applications Nos. 1601 and 1604, filed by C. E. Fulton, agent, on behalf of carriers participating in rates named in Tariff No. A–42. This is an original suit in equity, and we would by no means be understood as holding generally that original evidence may not be received and heard to sustain averments made in the pleadings, but we see no reason to conclude that the affidavit of Compton, made without opportunity to cross-examine him, is admissible over the defendant's objection, in the absence at least of a showing that the testimony could not have been given by him as a witness in open court at the trial where he could have been cross-examined, and especially as his deposition could have been taken on due notice. Nor can we discern any reason why testimony taken in another case (long after that case was separated from this one, if indeed it ever had any connection with this particular litigation) can be admissible in this case without the consent of defendants, in view of the fact that it was entirely possible for the persons who testified in the other case to be produced as witnesses here. These reasons apply also to plaintiff's offer to read as testimony parts of the two fourth section applications filed by Fulton, as agent for certain carriers. We think it clear, therefore, that defendant's objections to these offers of testimony should be sustained.

The testimony of A. R. Smith was taken when the case was originally heard in the Commerce Court. Counsel for the defendants objected to it there, their principal reason therefor being that the court had no power to hear the case at all. That view was finally taken by the Commerce Court, though not by the Supreme Court. Under these circumstances we think the defendant's objection to this testimony should be overruled, though what weight should be given to it upon the principal question involved is a very different proposition.

Our conclusions are that the plaintiff's motion for a temporary injunction pendente lite should be overruled and denied, and that the bill should be dismissed. A decree accordingly will be entered.